## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

|  |  |
|---|---|
| ELIE J. PIERRE AND MARIE D. PIERRE, on behalf of themselves and others similarly situated, | **Civil Action No. 0:21-cv-60830** |
| Plaintiffs, |  |
| v. | **COMPLAINT** |
| JAMES E. ALBERTELLI PA D/B/A ALBERTELLI LAW, and U.S. BANK TRUST NATIONAL ASSOCIATION, | **JURY TRIAL DEMANDED** |
| Defendants. |  |

### Nature of Action

1.      Elie J. Pierre and Marie D. Pierre (together, "Plaintiffs") bring this action against James E. Albertelli PA d/b/a Albertelli Law ("Albertelli") and U.S. Bank Trust National Association ("U.S. Bank Trust") (together, "Defendants") pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*., and the Florida Consumer Collection Practices Act ("FCCPA"), Fla Stat. § 559.55 *et seq*.

2.      Congress enacted the FDCPA in 1977 to "eliminate abusive debt collection practices by debt collectors," 15 U.S.C. § 1692(e), and in response to "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which Congress found to have contributed "to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a).

3.      The FCCPA is Florida's state-law analog to the FDCPA and offers many of the same protections, and more, as the FDCPA. *See* Fla. Stat., § 559.552 ("This part is in addition to

1

the requirements and regulations of the federal act. In the event of any inconsistency between any provision of this part and any provision of the federal act, the provision which is more protective of the consumer or debtor shall prevail.").

4.     As the Consumer Financial Protection Bureau ("CFPB")—the federal agency tasked with enforcing the FDCPA—explained, "[h]armful debt collection practices remain a significant concern today. In fact, the CFPB receives more consumer complaints about debt collection practices than about any other issue."[1]

5.     On March 18, 2020, due to the rise of the ongoing COVID-19 pandemic, the U.S. Department of Housing and Urban Development ("HUD") announced a moratorium on evictions and foreclosures applying to "single family homeowners with FHA-insured mortgages" (the "HUD Moratorium"):[2]

> U.S. Department of Housing and Urban Development (HUD) Secretary Ben Carson, in consultation with the Trump Administration and the Coronavirus Task Force, today authorized the Federal Housing Administration (FHA) to implement an immediate foreclosure and eviction moratorium for single family homeowners with FHA-insured mortgages for the next 60 days. These moratoriums are part of the continued effort by President Trump to address impacts to the financial well-being of America's individuals, families, and businesses caused by Coronavirus (COVID-19).
>
> "Today's actions will allow households who have an FHA-insured mortgage to meet the challenges of COVID-19 without fear of losing their homes, and help steady market concerns," said HUD Secretary Ben Carson. "The health and safety of the American people is of the utmost importance to the Department, and the halting of all foreclosure actions and evictions for the next 60 days will provide homeowners with some peace of mind during these trying times."

---

[1]     *See* Brief for the CFPB as Amicus Curiae, ECF No. 14 at 2, *Hernandez v. Williams, Zinman, & Parham, P.C.*, No. 14-15672 (9th Cir. Aug. 20, 2014), http://www.ftc.gov/system/files/documents/amicus_briefs/hernandez-v.williams-zinman-parham-p.c./140821briefhernandez1.pdf.

[2]     https://www.hud.gov/press/press_releases_media_advisories/HUD_No_20_042     (last accessed April 9, 2021).

The guidance issued today applies to homeowners with FHA-insured Title II Single Family forward and Home Equity Conversion (reverse) mortgages, and directs mortgage servicers to:

> Halt all new foreclosure actions and suspend all foreclosure actions currently in process; and
> Cease all evictions of persons from FHA-insured single-family properties.

"This is an uncertain time for many Americans, particularly those who could experience a loss of income. As such, we want to provide FHA borrower households with some immediate relief given the current circumstances," said Federal Housing Commissioner Brian Montgomery. "Our actions today make it clear where the priority needs to be."[3]

6.      On August 27, 2020, HUD announced that the Moratorium would extend until the end of 2020,[4] *see* Ex. A, and most recently, on February 16, 2021, HUD announced that the Moratorium would continue until at least June 30, 2021.[5]

7.      Similarly, on March 18, 2020, the Federal Housing Finance Agency ("FHFA") also announced a moratorium on evictions and foreclosures applying to mortgage loans backed by Fannie Mae and Freddie Mac (the "Enterprise Moratorium"):

> Today, to help borrowers who are at risk of losing their home, the Federal Housing Finance Agency (FHFA) has directed Fannie Mae and Freddie Mac (the Enterprises) to suspend foreclosures and evictions for at least 60 days due

---

[3]      *See* CORONAVIRUS AID, RELIEF, AND ECONOMIC SECURITY ACT, Pub. L. No. 116-136, 134 Stat. 281 § 4022(c)(2) (March 27, 2020):

> (2) FORECLOSURE MORATORIUM.—Except with respect to a vacant or abandoned property, a servicer of a Federally backed mortgage loan may not initiate any judicial or non-judicial foreclosure process, move for a foreclosure judgment or order of sale, or execute a foreclosure-related eviction or foreclosure sale for not less than the 60-day period beginning on March 18, 2020.

[4]      https://www.hud.gov/press/press_releases_media_advisories/HUD_No_20_134      (last accessed April 9, 2021).

[5]      https://www.hud.gov/press/press_releases_media_advisories/hud_no_21_023      (last accessed April 9, 2021).

to the coronavirus national emergency. The foreclosure and eviction suspension applies to homeowners with an Enterprise-backed single-family mortgage.

. . .

"This foreclosure and eviction suspension allows homeowners with an Enterprise-backed mortgage to stay in their homes during this national emergency," said Director Mark Calabria.[6]

8.      And in the months that followed, amid the escalating COVID-19 pandemic, the FHFA extended the Enterprise Moratorium on foreclosures and evictions multiple times, and it continues to the present day.

9.      Most recently, "FHFA announced that Fannie Mae and Freddie Mac (the Enterprises) are extending the moratoriums on single-family foreclosures and real estate owned (REO) evictions until June 30, 2021. The foreclosure moratorium applies to Enterprise-backed, single-family mortgages only. The REO eviction moratorium applies to properties that have been acquired by an Enterprise through foreclosure or deed-in-lieu of foreclosure transactions. The current moratoriums were set to expire on March 31, 2021."[7]

10.     Due to these numerous press releases and other related material, Defendants received plentiful notice that certain federally backed mortgages were subject to a moratorium on foreclosures and evictions.

11.     Plaintiffs' mortgage loan was an FHA-insured mortgage for a single-family home subject to the HUD Moratorium.

---

[6]     https://www.fhfa.gov/Media/PublicAffairs/Pages/FHFA-Suspends-Foreclosures-and-Evictions-for-Enterprise-Backed-Mortgages.aspx (last accessed April 9, 2021).

[7]     https://www.fhfa.gov/Media/PublicAffairs/Pages/FHFA-Extends-COVID-19-Forbearance-Period-and-Foreclosure-and-REO-Eviction-Moratoriums.aspx (last accessed April 9, 2021).

12.     As a result, this case centers on a brazen violation of the HUD Moratorium: Defendants forced eviction of Plaintiffs from their home—despite the prohibition on such evictions due to the ongoing COVID-19 pandemic—in an attempt to collect a debt allegedly owed by Plaintiffs.

**PARTIES**

13.     Mr. Pierre is a natural person who at all relevant times resided in Broward County, Florida.

14.     Mrs. Pierre is a natural person who at all relevant times resided in Broward County, Florida.

15.     Plaintiffs are each a "consumer" as defined by 15 U.S.C. § 1692a(3).

16.     Plaintiffs were obligated, or allegedly obligated, to pay a debt owed or due, or asserted to be owed or due, a creditor other than Albertelli.

17.     Plaintiffs' obligations, or alleged obligations, owed or due, or asserted to be owed or due, arose from a transaction in which the money, property, insurance, or services that are the subject of the transactions were incurred primarily for personal, family, or household purposes—namely, a foreclosure judgment on personal property (the "Debt").

18.     Albertelli is a law firm with offices in multiple states, including Tampa, Florida.

19.     Albertelli is an entity that at all relevant times was engaged, by use of the mails and telephone, in the business of attempting to collect the Debt from Plaintiffs.

20.     Upon information and belief, at the time Albertelli attempted to collect the Debt from Plaintiffs, the Debt was in default, or Albertelli treated the Debt as if it was in default from the time that Albertelli acquired the Debt for collection.

21.     Albertelli uses instrumentalities of interstate commerce or the mails in a business the principal purpose of which is the collection of any debts, and/or to regularly collect or attempt to collect, directly or indirectly, debts owed or due, or asserted to be owed or due, another.

22.     Indeed, Albertelli markets itself as having a "Creditors' Rights" division that "represents loan servicers, lenders and investors in judicial and non-judicial foreclosure matters in Alabama, Arkansas, Florida, Georgia, North Carolina, Ohio, South Carolina, Tennessee, Texas and the U.S. Virgin Islands."[8]

23.     Albertelli is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6), and the FCCPA, Fla. Stat., § 559.55(7).

24.     U.S. Bank Trust is a trustee of Carisbrook Asset Holding Trust, and is tasked with carrying out functions on its behalf.

25.     U.S. Bank Trust is a "person" under the FCCPA.

26.     Upon information and good faith belief, U.S. Bank Trust retained Albertelli to collect a mortgage debt that it considered to be in default, and in doing so, to perfect a foreclosure on Plaintiffs' home.

## JURISDICTION AND VENUE

27.     This Court has jurisdiction pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

28.     This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

---

[8]     *See* https://alaw.net/services/creditors-rights/ (last accessed April 9, 2021).

6

29.     Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b) and Fla. Stat., § 559.77(1), as a substantial part of the events or omissions giving rise to the claim occurred in this district.

## FACTUAL ALLEGATIONS

30.     On May 6, 2010, Plaintiffs obtained an FHA-insured mortgage for the purchase of a single-family home located at 223 SW 159th, Sunrise, Florida 33326 (the "Mortgage"). *See* Ex. B.

31.     Beginning in June 2012, Plaintiffs fell into default on their Mortgage.

32.     On November 15, 2013, U.S. Bank Trust filed a foreclosure lawsuit against Plaintiffs, seeking to foreclose on their property as a result of Plaintiffs' Mortgage default. *See US Bank Trust Nat'l Ass'n v. Pierre*, Case No. CACE13025278 (Broward Cir. Ct.).

33.     US Bank Trust ultimately obtained a judgment against Plaintiffs on May 23, 2018.

34.     After a series of delays, on August 26, 2020, in the midst of the COVID-19 pandemic, Defendants moved to reschedule a foreclosure sale of Plaintiffs' property, which the court granted and set for February 2, 2021. *See* Ex. C.

35.     Defendants did not notify the court that Plaintiffs' Mortgage was an FHA-insured loan subject to the HUD Moratorium. *See id.*

36.     On February 2, 2021, Plaintiffs' home was auctioned and sold by Defendants. *See* Ex. D.

37.     On March 1, 2021, Defendants caused Plaintiffs to be served with a writ of possession and eviction notice by way of a Broward County Sheriff. *See* Ex. E.

38.     Through this writ of possession, Plaintiffs were provided 24 hours' notice to vacate their home.

39.     That same day, on March 1, 2021, Plaintiffs vacated their home.

40.     However, in the rush to vacate their home, Plaintiffs left some personal property behind, and hoped to retrieve that property at a later date.

41.     About two days later, Plaintiffs returned to their former home to collect their outstanding property, but found that the locks on the home were changed and the property was otherwise vacant, so they were unable to do so.

42.     At the time that Defendants initiated the foreclosure sale, executed the writ of possession, and evicted Plaintiffs from their home, Plaintiffs were not aware of the Moratorium.

43.     Plaintiffs would not have vacated their home—nor moved to a new home—during the ongoing COVID-19 pandemic if Defendants did not sell their home and forcibly evict Plaintiffs from their home.

### COUNT I: VIOLATION OF 15 U.S.C. § 1692d
### (Against Albertelli)

44.     Plaintiffs repeat and re-allege each and every factual allegation contained in paragraphs 1 through 43.

45.     The FDCPA at 15 U.S.C. § 1692d provides that "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."

46.     Albertelli violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Plaintiffs by evicting Plaintiffs from their home and completing a foreclosure sale of Plaintiffs' home during the pendency of the Moratorium.

47.     Plaintiffs' mortgage was an FHA-insured single family home loan, and so Plaintiffs were protected from eviction and foreclosure during the pendency of the HUD Moratorium.

48.     Because Plaintiffs' mortgage was subject to the protections offered by the HUD Moratorium, Albertelli was prohibited from initiating a foreclosure sale, executing a writ of possession, and evicting Plaintiffs from their home.

49.     Albertelli initiated the foreclosure sale, executed a writ of possession, and evicted Plaintiffs from their home in furtherance of its debt collection efforts.

50.     And, by evicting Plaintiffs from their home during an ongoing national pandemic and emergency—in direct contravention of the HUD Moratorium— Albertelli caused a concrete injury to Plaintiffs by forcing them to spend money to relocate from their home amid an ongoing national pandemic.

## COUNT II: VIOLATION OF 15 U.S.C. § 1692f
### (Against Albertelli)

51.     Plaintiffs repeat and re-allege each and every factual allegation contained in paragraphs 1 through 43.

52.     The FDCPA at 15 U.S.C. § 1692f provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

53.     Albertelli violated 15 U.S.C. § 1692f by engaging in unfair or unconscionable debt collection practices by evicting Plaintiffs from their home and completing a foreclosure sale of Plaintiffs' home during the pendency of the HUD Moratorium.

54.     Plaintiffs' mortgage was an FHA-insured single family home loan, and so Plaintiffs were protected from eviction and foreclosure during the pendency of the HUD Moratorium.

55.     Because Plaintiffs' mortgage was subject to the protections offered by the HUD Moratorium, Albertelli was prohibited from initiating a foreclosure sale, executing a writ of possession, and evicting Plaintiffs from their home.

56.     Albertelli initiated the foreclosure sale, executed a writ of possession, and evicted Plaintiffs from their home in furtherance of its debt collection efforts.

57.     And, by evicting Plaintiffs from their home during an ongoing national pandemic and emergency—in direct contravention of the HUD Moratorium—Albertelli caused a concrete injury to Plaintiffs by forcing them to spend money to relocate from their home amid an ongoing national pandemic.

## COUNT III: VIOLATION OF FLA. STAT. 559.72
### Against Defendants

58.     Plaintiffs repeat and re-allege each and every factual allegation contained in paragraphs 1 through 43.

59.     The FCCPA at Fla. Stat. § 559.72 provides:

In collecting consumer debts, no person shall:
. . .
(9) Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist.
(10) Use a communication that simulates in any manner legal or judicial process or that gives the appearance of being authorized, issued, or approved by a government, governmental agency, or attorney at law, when it is not.

60.     U.S. Bank Trust retained Albertelli for the purpose of foreclosing on Plaintiffs' home and collecting the Debt.

61.     At the time U.S. Bank Trust retained Albertelli, the Debt was, upon information and belief, in default, or Defendants considered it to be in default.

62.     Defendants violated Fla. Stat. § 559.72(9) by—in the process of collecting a consumer debt—wrongfully asserting the right to evict Plaintiffs from their home as part of ongoing foreclosure proceedings during the pendency of the HUD Moratorium.

63.     Defendants violated Fla. Stat. § 559.72(10) by—in the process of collecting a consumer debt—communicating with Plaintiffs in a manner which indicated that Defendants were authorized to evict Plaintiffs from their home and sell Plaintiffs' home during the pendency of the HUD Moratorium, despite a national prohibition on evictions during the ongoing COVID-19 pandemic.

64.     Plaintiffs' mortgage was an FHA-insured single family home loan, and so Plaintiffs were protected from eviction and foreclosure during the pendency of the HUD Moratorium.

65.     Because Plaintiffs' mortgage was subject to the protections offered by the HUD Moratorium, Defendants were prohibited from initiating a foreclosure sale, executing a writ of possession, and evicting Plaintiffs from their home.

66.     Albertelli initiated the foreclosure sale, executed a writ of possession, and evicted Plaintiffs from their home in furtherance of its debt collection efforts on U.S. Bank Trust's behalf, and at the direction of U.S. Bank Trust.

67.     And, by evicting Plaintiffs from their home during an ongoing national pandemic and emergency—in direct contravention of the HUD Moratorium—Defendants caused a concrete injury to Plaintiffs by forcing them to spend money to relocate from their home amid an ongoing national pandemic.

68.     Because Defendants were not authorized to evict Plaintiffs from their home during the pendency of the Moratorium, their actions in furtherance of initiating a foreclosure

sale, executing a writ of possession, and evicting Plaintiffs from their home were an attempt to "assert the existence of [a] legal right when such person knows that the right does not exist." Fla. Stat. § 559.72(9).

69.    Because Defendants were not authorized to evict Plaintiffs from their home during the pendency of the Moratorium, their communications with Plaintiffs in furtherance of this effort "g[ave] the appearance of being authorized, issued, or approved by a government, governmental agency, or attorney at law," Fla. Stat. § 559.72(10), but the HUD Moratorium makes clear that Defendants lacked (and still lack) the authority to evict Plaintiffs from their home.

**WHEREFORE**, Plaintiffs respectfully request relief and judgment as follows:

A. Adjudging and declaring that Albertelli violated 15 U.S.C. §§ 1692d and 1692f;

B. Adjudging and declaring that Defendants violated Fla. Stat. §§ 559.72(9)-(10);

C. Awarding Plaintiffs actual and statutory damages pursuant to 15 U.S.C. § 1692k and Fla. Stat., § 559.77(2);

D. Awarding Plaintiffs their reasonable costs and attorneys' fees incurred in this action, including expert fees, pursuant to 15 U.S.C. § 1692k and Fla. Stat., § 559.77(2);

E. Awarding Plaintiffs any pre-judgment and post-judgment interest as may be allowed under the law; and

F. Awarding other and further relief as the Court may deem just and proper.

**TRIAL BY JURY**

Plaintiffs are entitled to and hereby demand a trial by jury.

Dated:  April 16, 2021                                              Respectfully submitted,

                                                                    */s/ Alexander D. Kruzyk*
                                                                    James L. Davidson
                                                                    Alexander D. Kruzyk
                                                                    Greenwald Davidson Radbil PLLC
                                                                    7601 N. Federal Hwy., Suite A-230
                                                                    Boca Raton, FL 33487
                                                                    Tel: (561) 826-5477
                                                                    jdavidson@gdrlawfirm.com
                                                                    akruzyk@gdrlawfirm.com

                                                                    *Counsel for Plaintiffs*